**Opinion filed January 23, 2020**



In The

# Eleventh Court of Appeals

_____

## No. 11-19-00254-CV

_____

## IN THE INTEREST OF H.A.S., A CHILD

**On Appeal from the 446th District Court**
**Ector County, Texas**
**Trial Court Cause No. E-18-046-PC**

## M E M O R A N D U M   O P I N I O N

This is an appeal from an order in which the trial court terminated the parental rights of H.A.S.'s mother and father. The mother filed this appeal. On appeal, she presents ten issues in which she challenges the legal and factual sufficiency of the evidence. We affirm.

The termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2019). To terminate parental rights, it must be shown by clear and convincing evidence that the parent

has committed one of the acts listed in Section 161.001(b)(1)(A)–(U) and that termination is in the best interest of the child. *Id.*

In this case, the trial court found that Appellant had committed four of the acts listed in Section 161.001(b)(1)—those found in subsections (D), (E), (N), and (O). Specifically, the trial court found that Appellant had knowingly placed or knowingly allowed the child to remain in conditions or surroundings that endangered the child's physical or emotional well-being, that Appellant had engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangered the child's physical or emotional well-being, that Appellant had constructively abandoned the child, and that Appellant had failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of the child, who had been in the managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parents for abuse or neglect. The trial court also found, pursuant to Section 161.001(b)(2), that termination of Appellant's parental rights would be in the best interest of the child.

To determine if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002).

With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied).

But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent–child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

The Department received an intake in June 2018 regarding physical neglect, neglectful supervision, inappropriate housing, and drug use. An investigator with the Department went to the residence where the child and her father lived. The living conditions at the father's residence, which had been condemned, were deplorable and presented a danger to H.A.S. The home was filthy and falling apart, and there was no food there. The father admitted that he used methamphetamine and marihuana and that he had allowed other drug addicts to live on the property. The investigator testified that H.A.S. was frail, dirty, and hungry and had lice. H.A.S. was removed and placed with a paternal aunt and uncle, with whom she remained at the time of trial.

At the time of removal, Appellant was incarcerated in a federal penitentiary in Florida. She had been incarcerated since February 2011, when the child would have been three years old. Appellant was released from the penitentiary in

February 2019, approximately four and one-half months prior to the date of the final hearing on termination. Appellant acknowledged that she had been incarcerated for a drug-related conspiracy offense and that she will remain on "probation" for more than four years after the date of the final hearing on termination. Appellant's current husband, with whom she had two sons prior to her incarceration, was also convicted of the same drug-related conspiracy offense as Appellant. Appellant testified that she had taken advantage of programs available to her while incarcerated, that she had changed, and that she believed she could be a good mother to H.A.S. Appellant believed that it would be in the best interest of H.A.S. for Appellant to remain in H.A.S.'s life and, if possible, for H.A.S. to move to North Carolina and live with Appellant, her husband, and their children.

Appellant said that she had concerns about the father's ability to care for H.A.S. but that she was unaware of the horrible living conditions endured by H.A.S. while in the father's care. Appellant testified that, when H.A.S. was two or three years old, a judge had granted joint custody of H.A.S. to Appellant and the father, with the father receiving primary possession. Appellant testified that the father had refused to permit Appellant to exercise her visitation with H.A.S., but she also testified: "I was unable to have [H.A.S.] in my care because of me being pregnant high risk."

In her testimony at the final hearing, Appellant claimed to have had many phone calls with H.A.S. while Appellant was incarcerated—"at least twice a week." Appellant subsequently testified that, over the years, she had spoken to H.A.S. on the phone "between ten and 15 times." Appellant also claimed that her older daughter and H.A.S. talked to each other on the phone "all the time." H.A.S., however, indicated that she knew nothing of an older half-sister and that she did not even know who her mother was. Appellant also claimed to have seen H.A.S. "in

4

2009" when H.A.S. "was eight or nine years old." After some prodding by the Department's attorney, Appellant apologized and agreed that H.A.S. must have been only two years old when Appellant last saw her.

At the time of the hearing, H.A.S. was almost twelve years old, and she had not seen her mother since she was one year old. The record reflects that H.A.S. had no relationship with Appellant and had no desire to have any contact with Appellant. The conservatorship caseworker testified that H.A.S. "exhibited a lot of anxiety and a lot of stress" at the prospect of even meeting Appellant.

The conservatorship caseworker, the child's attorney ad litem, and a CASA representative all believed that termination of Appellant's parental rights would be in H.A.S.'s best interest. H.A.S. had been placed in a stable and loving home with a paternal aunt and uncle, and she was doing well there. H.A.S. was happy and had adjusted well in her aunt and uncle's home. H.A.S. wants to be adopted by her aunt and uncle, and the aunt testified that she and her husband want to adopt H.A.S.

In her third through tenth issues, Appellant challenges the legal and factual sufficiency of the evidence to prove grounds (D), (E), (N), and (O). We first address Appellant's fifth and sixth issues—her challenge to the trial court's findings under Section 161.001(b)(1)(E). *See In re N.G.*, 577 S.W.3d 230, 234–35 (Tex. 2019) (addressing due process and due course of law with respect to appellate review of grounds (D) and (E) and holding that an appellate court must provide a detailed analysis if affirming the termination on either of these grounds).

Under subsection (E), the relevant inquiry is whether evidence exists that the endangerment of the child's well-being was the direct result of the parent's conduct, including acts, omissions, or failures to act. *In re D.O.*, 338 S.W.3d 29, 33 (Tex. App.—Eastland 2011, no pet.). Additionally, termination under subsection (E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious

course of conduct by the parent is required. *In re D.T.*, 34 S.W.3d 625, 634 (Tex. App.—Fort Worth 2000, pet. denied); *In re K.M.M.*, 993 S.W.2d 225, 228 (Tex. App.—Eastland 1999, no pet.). The offending conduct does not need to be directed at the child, nor does the child actually have to suffer an injury. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009).

Mere imprisonment, standing alone, does not support a finding under subsection (E) as it does "not . . . constitute engaging in conduct which endangers the emotional or physical well-being of a child." *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). However, evidence of criminal conduct, convictions, and imprisonment and their effect on the parent's life and ability to parent may establish an endangering course of conduct. *In re B.C.S.*, 479 S.W.3d 918, 926 (Tex. App.—El Paso 2015, no pet.). An offense committed by a parent before the birth of the parent's child "can be a relevant factor in establishing an endangering course of conduct." *In re E.N.C.*, 384 S.W.3d 796, 804–05 (Tex. 2012) (citing *J.O.A.*, 283 S.W.3d at 345).

The record reflects that, in addition to the drug-related conspiracy that Appellant committed when H.A.S. was young, Appellant had been convicted of other crimes before H.A.S. was born. Furthermore, even though Appellant had concerns about the father's ability to care for H.A.S., Appellant either failed to exercise or failed to enforce her possessory rights to H.A.S. when H.A.S. was very young. The trial court could have determined from the evidence presented that Appellant voluntarily engaged in an endangering course of conduct. *See J.O.A.*, 283 S.W.3d at 345–46; *In re S.L.-E.A.*, No. 02-12-00482-CV, 2013 WL 1149512, at \*9–10 (Tex. App.—Fort Worth Mar. 21, 2013, pet. denied) (mem. op.). We believe that the trial court could have found by clear and convincing evidence that Appellant had engaged in a course of conduct that endangered H.A.S.'s physical or emotional

well-being.  Accordingly, we hold that the evidence is legally and factually sufficient to uphold the trial court's finding under subsection (E).  We overrule Appellant's fifth and sixth issues.  Because only one statutory ground is necessary to support termination and because we have upheld the trial court's finding under subsection (E), we need not address Appellant's third, fourth, seventh, eighth, ninth, and tenth issues.  *See* FAM. § 161.001(b)(1); *N.G.*, 577 S.W.3d at 234–35.

In her first and second issues, Appellant challenges the sufficiency of the evidence to support the trial court's finding that termination of Appellant's parental rights was in the best interest of H.A.S.  As set forth above, H.A.S. had been placed with a paternal aunt and uncle in an appropriate home and had thrived there.  H.A.S. wants to be adopted by her aunt and uncle; she did not even want to meet her mother when both were present for the final hearing.  H.A.S. remained in the CASA office during the hearing because she did not want to be in the courtroom.  The conservatorship worker, the attorney ad litem, and the CASA representative believed that termination of Appellant's parental rights would be in H.A.S.'s best interest.  Appellant had not seen H.A.S. since she was one year old.  Appellant was convicted of a drug-related conspiracy when H.A.S. was three years old.  For that conviction, Appellant served eight years of her eleven-year-sentence in a federal penitentiary.  Although Appellant testified that she had changed, that she was able to be a good mother, and that she wanted to remain in H.A.S.'s life, we defer to the trial court's finding.  *See C.H.*, 89 S.W.3d at 27.

We hold that, based on the evidence presented at trial and the *Holley* factors, the trial court could reasonably have formed a firm belief or conviction that termination of Appellant's parental rights would be in H.A.S.'s best interest.  *See Holley*, 544 S.W.2d at 371–72.  Upon considering the record as it relates to the desires of the child, the emotional and physical needs of H.A.S. now and in the

future, the emotional and physical danger to H.A.S. now and in the future, the parental abilities of those involved, the plans for the child by the Department, Appellant's criminal activity, and the stability of H.A.S.'s placement with her aunt and uncle, we hold that the evidence is sufficient to support the finding that termination of Appellant's parental rights is in the best interest of H.A.S. *See id.* We cannot hold that the finding as to best interest is not supported by clear and convincing evidence. We overrule Appellant's first and second issues on appeal.

We affirm the trial court's order of termination.


JIM R. WRIGHT
SENIOR CHIEF JUSTICE


January 23, 2020

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[1]

Willson, J., not participating.

---

[1]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.